# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **ELIZABETH CAUDILL,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:11CV00034 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Lewey K. Lee, Lee & Phipps, PC, Wise, Virginia, for Plaintiff. Nora R. Koch, Acting Regional Chief Counsel, Region III, Michelle Scotese, Assistant Regional Counsel, and Robert W. Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Elizabeth Caudill filed this claim challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C.A.

§§ 401-433 (West 2011 & Supp. 2012) and 1381-1383f (West 2012). Jurisdiction of this court exists under 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Caudill applied for SSI on August 10, 2007 and for DIB on September 11, 2007. The claims were denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ"), at which Caudill, represented by counsel, and a vocational expert testified. The ALJ issued a decision finding that Caudill was not disabled on June 25, 2010. The Social Security Administration's Appeals Council denied Caudill's request for review and the ALJ's decision became the final decision of the Commissioner. Caudill then filed her Complaint in this court seeking judicial review of the decision.

The parties have filed cross motions for summary judgment, which have been briefed. The case is ripe for decision.

II

Caudill was 52 at the time of the ALJ's decision, making her a "person closely approaching advanced age" under the regulations. 20 C.F.R. §§ 404.1563(d), 416.963(d) (2012). She attended school through the ninth grade. Caudill alleges disability due to problems with her back and hands, depression, anxiety, female problems, and breathing. Her past relevant work included housekeeping and working as a short-order cook.

Caudill reported doing the dishes and the laundry, preparing her own meals, cleaning the house, shopping for groceries, attending church, and driving. She reported having a boyfriend and enjoyed fishing, going to movies, picnics, and cooking out.

In August 2007, Caudill presented to Stone Mountain Health Services ("Stone Mountain") to obtain a new primary care provider. She reported problems with asthma, arthritis, back pain, nervousness, memory loss, and excessive moodiness. On examination, she was observed to be generally normal with only some tenderness in the spine on palpitation. An August 28, 2007, CT scan of the lumbosacral spine indicated severe degenerative changes at L4-5 and L5-S1. She was assessed with COPD, chronic low back pain, and generalized anxiety disorder and was prescribed Lortab and Xanax and referred to Wise County Behavioral Health. This assessment stayed essentially the same through her November 2007 visit. At Caudill's December 2007 and February and March 2008 visits, her physical and psychological examinations were within normal limits. The nurse practitioner noted that Caudill's lower back pain was stable with Lortab.

In September 2007, Caudill was seen at Wise County Behavioral Health. She was assessed with depressive disorder, anxiety disorder, and a global

-3-

Case 2:11-cv-00034-JPJ-PMS   Document 19   Filed 07/26/12   Page 3 of 14   Pageid#: 509

assessment of functioning ("GAF") score of 50.[1] It was recommended that she participate in individual psychotherapy at least once a month. Caudill attended only one therapy session. She was seen again in March 2008 and diagnosed by the clinical social worker with dysthymic disorder, post-traumatic stress disorder, and a GAF of 55. She was scheduled for counseling appointments but never appeared for the appointments.

In June 2008, the nurse practitioner at Stone Mountain again assessed generalized anxiety disorder and prescribed Celexa. It was reported that Celexa worked "great" for Caudill. (R. at 193.) In October and December 2008, Caudill had a sad mood and anxious affect. She told the examining social worker that the combination of Celexa and Xanax worked for her. The social worker concluded that Caudill had a current GAF of 40, with a past GAF of 70. Caudill's physical exams were generally normal, but with noted tenderness to her lower back on palpitation. Despite the tenderness in her back, Caudill reported she was capable of exercising.

---

[1] The global assessment of functioning ("GAF") scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score below 50, moderate difficulty in functioning at 60 and below, some difficulty in functioning at 70 and below, and no more than slight impairment in functioning at 80 and below. Superior functioning is represented by 100. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

In July 2008, Caudill was examined by Kevin Blackwell, D.O., a state agency consultative examiner. Dr. Blackwell observed that Caudill was in no acute distress and was cooperative and displayed "good mental status." (R. at 348.) Although she wheezed, she did not have shortness of breath. She had some tenderness in her lumbar spine, but her gait and range of motion were normal. She had normal grip strength and fine motor skills, and her Tinel's sign was negative. Dr. Blackwell opined that Caudill could lift up to 35 pounds occasionally and up to 20 pounds frequently, sit for 8 hours in an 8-hour day and stand for 4 hours in an 8-hour day. He concluded that Caudill should avoid extreme temperature changes, kneeling, bending for more than two-thirds of a workday, squatting for more than one-third of a workday, crawling, repetitive stooping, and keyboarding for more than two-thirds of a workday.

In December 2008, Caudill underwent a consultative examination with Robert Spangler, Ed.D. Dr. Spangler noted that while Caudill seemed socially confident, she was anxious and depressed and demonstrated erratic concentration. Caudill could adequately recall remote events but not recent events and although she was unable to perform serial sevens or threes, she performed serial fives and could spell "world" backwards. Her stream of thought was concrete and her associations were logical. Dr. Spangler opined that Caudill functioned in the borderline to low-average range of intelligence. He diagnosed "mild to moderate"

depressive disorder and a GAF score of 55. He opined that Caudill had a "fair" to "good" ability to make occupational adjustments, a "fair" ability to work with simple job instructions, and a "fair" ability to make personal/social adjustments. Dr. Spangler opined that Caudill would be likely to miss more than two days of work a month.

At her February 2009 appointment at Stone Mountain, Caudill described increased social phobia and exhibited an anxious mood and affect with some depression. She was alert and oriented times three. In April and March 2009 she was apparently doing very well and from March 2009 through December 2009, the treatment notes do not indicate any mental abnormality. Caudill's physical problems focused primarily on weight management. She denied being short of breath. She did have some tenderness to her spine on palpitation.

In April and September 2010, Caudill was seen at Stone Mountain. Mental examinations showed that her memory, mood, affect, judgment, and insight were within normal limits. She had a reduced range of motion of the lumbar spine. In September 2010, Caudill underwent a behavioral health consult. She reported significant physical health problems, panic attacks and feelings of depression. She was alert and oriented, anxious, and her mood appeared depressed. The social worker opined that Caudill appeared to have symptoms of major depression and panic disorder.

Misty Bendall, F.N.P., a nurse practitioner at Stone Mountain, completed two Assessments of Ability to do Work-Related Activities (Physical), dated December 2008 and April 2010. In both assessments, Bendall opined that Caudill could not lift, stand/walk for only 30 minutes at a time, could sit for only 1-2 hours in an 8-hour day, could occasionally balance, but never perform other postural activities, had a limited ability to reach, push, or pull, and needed to avoid heights, moving machinery, temperature extremes, and vibration. Bendall opined that Caudill would be absent from work for more than two days a month.

In November 2007, state agency physician Frank M. Johnson, M.D., reviewed the record and opined that Caudill retained the ability to perform light exertional work activities, with frequent climbing of ramps and stairs, and occasional balancing, stooping, kneeling, crouching, and crawling. Robert McGuffin, M.D., reviewed the updated record in September 2008 and concurred with Dr. Johnson's opinion.

In November 2007, Louis Perrott, Ph.D., a state agency psychological consultant, opined that Caudill's mental impairments were not severe. Julie Jennings, Ph.D., affirmed this opinion upon review.

At the administrative hearing, Caudill testified that she has daily pain in her lower back that radiates down her leg. She said that she suffers from depression and anxiety, has weekly crying spells and panic attacks. She stated that she had

trouble sleeping at night. She also stated that she did not do a lot of housework but on good days she did dishes and laundry. On bad days, two to four times a week, she stays in bed. The vocational expert testified that Caudill's work history in housekeeping was light duty, unskilled, and as a short-order cook was light duty, semi-skilled.

In his decision, the ALJ concluded that Caudill had the severe impairments of degenerative disc disease of the lumbosacral spine, obesity, depression, and anxiety. He concluded that none of these impairments met or medically equaled a listed impairment. He further concluded that Caudill had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) (2012) and that Caudill could perform her past relevant work as either a housekeeper or short-order cook. Because she could perform her past relevant work, the ALJ found that she was not disabled.

In January 2011, Caudill was evaluated again by Dr. Spangler. The mental status examination findings were essentially the same except that Dr. Spangler observed Caudill to have a bad affect. He diagnosed Caudill with generalized anxiety disorder (moderate to severe), depressive disorder, not otherwise specified (moderate to severe superimposed on a dysthymic disorder), low borderline intelligence, and a GAF score of 50-55. He also completed a Medical Assessment of Ability to do Work-related Activities (Mental) and opined that Caudill had poor

or no ability to deal with the public or work stress, work with complex or detailed job instructions, or demonstrate reliability. Dr. Spangler rated Caudill's other functional abilities as fair to good.

Caudill complains that the ALJ's decision is not supported by substantial evidence. For the reasons below, I disagree.

### III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. §§ 423(d)(2)(A); 1382c(a)(3)(B).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or medically equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4) (2012). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.* The fourth and fifth steps of the inquiry require an assessment of the claimant's RFC, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.*; *Johnson v. Barnhart*, 434 F.3d 650, 653-54 (4th Cir. 2005).

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Caudill argues that the ALJ erred in determining her RFC because the ALJ did not give the opinions of Nurse Practioner Bendall and Dr. Spangler the proper

weight. Had the ALJ given the proper weight to those opinions, Caudill argues, he would have determined that she was unable to perform any substantial gainful activity at any level of exertion.

The question of the weight to be accorded medical opinions is reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b) (2012). In assessing medical opinions, the Commissioner evaluates several different factors including the examining relationship, the treatment relationship, supportability, and consistency. *See* 20 C.F.R. §§ 404.1527, 416.927 (2012). Where an opinion is not supported by the clinical evidence or is inconsistent with other substantial evidence, the opinion "should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

The ALJ carefully reviewed the record and concluded that Nurse Practioner Bendall's opinion, which outlined severe limitations to Caudill's physical abilities based on her back problems, was not supported by either Bendall's own treatment records or the rest of the evidence in the record. The treatment records indicate that for the bulk of Caudill's history, she only had some tenderness in her lower back on palpitation. There is only one documented example of reduced range of motion. Indeed, the record as a whole does not show that Caudill had any abnormality of gate, station, muscle tone, strength, or sensation. She did not require any assistance in walking. Also, Bendall followed a very conservative

-11-

course of treatment with Caudill. Such a conservative course of treatment is inconsistent with severe limitations Bendall imposed in her assessment. Finally, the record does not indicate that Bendall's daily activities were affected by back pain. For these reasons, the ALJ was within his discretion to accord Bendall's extremely limited assessment little weight.

Caudill asserts that the ALJ improperly rejected Dr. Spangler's opinion as to her mental ability to perform work. In fact, the ALJ considered Dr. Spangler's opinion but decided to give it only some weight. The ALJ's decision was based on the fact that Dr. Spangler did not have a treating relationship with Caudill and only assessed her at the request of her attorney in order to provide evidence for Caudill's claim for disability. It was also based on the fact that Dr. Spangler's restrictions were inconsistent with the GAF score he accorded to Caudill. These are both acceptable reasons for the ALJ to conclude that Dr. Spangler's opinion should be accorded less weight. *See* 20 C.F.R. §§ 404.1527, 416.927. In addition, Dr. Spangler's assessment conflicts with the bulk of the evidence in the record regarding Caudill's mental health.[2] Though it is clear that Caudill suffers from anxiety and depression, the evidence indicates she has responded well to medication and that the impairments have had little effect on her daily living.

---

[2] Dr. Spangler's 2011 assessment did not state anything substantially different from his earlier assessment.

Case 2:11-cv-00034-JPJ-PMS Document 19 Filed 07/26/12 Page 12 of 14 Pageid#: 518

Finally, Caudill makes reference to the fact that the opinions of the state agency physicians on both her physical and mental abilities were rendered in 2007 and 2008. She argues that the ALJ erred in giving those opinions greater weight than the more recent opinions of Bendall and Dr. Spangler. As noted, the ALJ was within his discretion to accord the opinions of Bendall and Dr. Spangler less weight because of their lack of support in the record. The simple fact that those opinions came later in time than the state agency opinions does not mean that they should be accorded greater weight. As the Third Circuit has noted, "[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 360-61 (3d Cir. 2011). In addition, the regulations provide that while the ALJ is not bound by any assessment made by state agency consultants, such consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Thus, the ALJ appropriately relied upon the opinions of the state agency examiners for his decision.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: July 26, 2012

/s/ James P. Jones
United States District Judge